aw Division Motion Section than Case Management Dates for SUPREME Court (VABIDivision exx, exxxxxioallheardoConsCourts.
ll other Law Division Initial Case Management Dates will be handled at jlcourts.info/forms.
or more information and Zoom Meeting IDs go to https://www.cookcountycourt.org/HOME?Zoom-Links?Agg4906_|SelectTab/12
court Date: 1/24/2024 10:00 AM

| **STE OF ILLINOIS,** CIRCUIT COURT | **SUMMONS** | FILED<br>11/14/2023 4:08 PM<br>IRIS Y. MARTINEZ<br>CIRCUIT CLERK<br>COOK COUNTY, IL<br>2023L011612<br>Calendar, A<br>25207400 |
|---|---|---|
| Cook _____ COUNTY | | |

| **Instructions ▼** | |
|---|---|
| Enter above the county name where the case was filed. | SHANNON O'BRIEN<br>**Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | v. |
| Below "Defendants/ Respondents," enter the names of all people you are suing. | **Defendants / Respondents** *(First, middle, last name)*<br>FRONTIER AIRLINES, INC., d/b/a FRONTIER AIRLINES |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* |

**Case Number**

**2023L011612**

# IMPORTANT: You have been sued.

- Read all documents attached to this Summons.

- You MUST file an official document with the court within the time stated on this Summons called an *Appearance* and a document called an *Answer/Response*. If you do not file an *Appearance* and *Answer/Response* on time, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.

- All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.

- After you fill out the necessary documents, you need to electronically file (e-file) them with the court. To e-file, you must create an account with an e-filing service provider. For more information, go to ilcourts.info/efiling. If you cannot e-file, you can get an exemption that allows you to file in-person or by mail.

- You may be charged filing fees, but if you cannot pay them, you can file an Application for Waiver of Court Fees.

- It is possible that the court will allow you to attend the first court date in this case in-person or remotely by video or phone. Contact the Circuit Court Clerk's office or visit the Court's website to find out whether this is possible and, if so, how to do this.

- Need help? Call or text Illinois Court Help at 833-411-1121 or go to ilcourthelp.gov for information about going to court, including how to fill out and file documents. You can also get free legal information and legal referrals at illinoislegalaid.org. All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.

- ¿Necesita ayuda? Llame o envíe un mensaje de texto a Illinois Court Help al 833-411-1121, o visite ilcourthelp.gov para obtener información sobre los casos de la corte y cómo completar y presentar formularios.

| **Plaintiff/Petitioner:** |
|---|

**Do not use this form** in these types of cases:

- All criminal cases
- Eviction
- Small Claims
- Divorce
- Order of protection
- Paternity
- Stalking no contact orders
- Civil no contact orders
- Adult guardianship
- Detinue
- Foreclosure
- Administrative review cases

**EXHIBIT F**

For eviction, small claims, divorce, and orders of protection, use the forms available at ilcourts.info/forms. If your case is a detinue, visit illinoislegalaid.org for help.

**If you are suing more than 1 Defendant/Respondent**, attach an *Additional Defendant/Respondent Address and Service Information* form for **each** additional Defendant/Respondent.

Enter the Case Number given by the Circuit Clerk:

**1. Defendant/Respondent's address and service information:**

| | In **1a**, enter the name and address of the first Defendant/ Respondent you are serving. If you are serving a Registered Agent, include the Registered Agent's name and address here. |
|---|---|

a. Defendant/Respondent's primary address/information for service:

Name *(First, Middle, Last)*: FRONTIER AIRLINES, INC., d/b/a FRONTIER AIRLINES

Registered Agent's name, if any: Corporation Service Company

Street Address, Unit #: 1900 W. Littleton Boulevard

City, State, ZIP: Littleton, CO 80120

Telephone: _____ Email: _____

In **1b**, enter a second address for the first Defendant/ Respondent, if you have one.

b. If you have more than one address where Defendant/Respondent might be found, list that here:

Name *(First, Middle, Last)*: _____

Street Address, Unit #: _____

City, State, ZIP: _____

Telephone: _____ Email: _____

In **1c**, check how you are sending your documents to this Defendant/ Respondent.

c. Method of service on Defendant/Respondent:

☐ Sheriff ☐ Sheriff outside Illinois: _____
*County & State*

☑ Special process server ☐ Licensed private detective

Check here if you are serving more than 1 Defendant/ Respondent. Attach an *Additional Defendant/ Respondent Address and Service Information* form for each additional Defendant/Respondent and write the number of forms you attached.

☐ **I am serving more than 1 Defendant/Respondent.**

I have attached _____ *Additional Defendant/Respondent Address*
*Number*
*and Service Information* forms.

In **2a**, enter the amount of money owed to you. Check **2b** if you are asking for the return of tangible personal property.

**2. Information about the lawsuit:**

a. Amount claimed: $ _____

☐ b. I am asking for the return of tangible personal property (items in the Defendant/Respondent's possession).

In **3**, enter your complete address, telephone number, and email address, if you have one.

**3. Contact information for the Plaintiff/Petitioner:**

Name *(First, Middle, Last)*: Lance D. Northcutt/Salvi Schostok & Pritchard

Street Address, Unit #: 161 N. Clark Street, Suite 4700

City, State, ZIP: Chicago, IL 60601

Telephone: (312) 372-1227 Email: lnorthcutt@salvilaw.com

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

| **Important information for the person getting this form** | You have been sued. Read all of the documents attached to this *Summons*. To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: ilcourts.info/forms. |
|---|---|

Check **4a** or **4b**. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**.

**4. Instructions for person receiving this *Summons (Defendant)*:**

☑ a. To respond to this *Summons*, you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service*) by e-filing or at:

Address: Richard J. Daley Center, 50 W. Washington Street

City, State, ZIP: Chicago, IL 60602

| | | |
|---|---|---|
| In **4a**, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/Response*. | ☐ b. | **Attend court:** |

☐ b. **Attend court:**

On: _____ at _____ ☐ a.m. ☐ p.m. in
        *Date*                    *Time*                        *Courtroom*

**In-person at:** _____

_____
*Courthouse Address*        *City*               *State*       *ZIP*

In **4b**, fill out:
- The court date and time the clerk gave you.
- The courtroom and address of the court building.
- The call-in or video information for remote appearances (if applicable).
- The clerk's phone number and website. All of this information is available from the Circuit Clerk.

OR

**Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"):

    By telephone: _____
                    *Call-in number for telephone remote appearance*

    By video conference: _____
                         *Video conference website*

_____
    *Video conference log-in information (meeting ID, password, etc.)*

Call the Circuit Clerk at: _____ or visit their website
                         *Circuit Clerk's phone number*

at: _____ to find out more about how to do this.
    *Website*

| | |
|---|---|
| **STOP!** The Circuit Clerk will fill in this section. | **Witness this Date:** _____ |

11/14/2023 4:08 PM IRIS Y. MARTINEZ

**Witness this Date:** _____

**Clerk of the Court:** _____

*Seal of Court*

| |
|---|
| **STOP! The officer or process server will fill in the Date of Service** |

**Note to officer or process server:**
- If 4a is checked, this *Summons* must be served within 30 days of the witness date.
- If 4b is checked, this *Summons* must be served at least 40 days before the court date, unless 2b is also checked.
  - If 4b and 2b are checked, the *Summons* must be served at least 3 days before the court date.

Date of Service: _____
          *(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)*

Enter the Case Number given by the Circuit Clerk.

**This form is approved by the Illinois Supreme Court and must be accepted in all Illinois Courts.**
**Forms are free at ilcourts.info/forms.**

| STATE OF ILLINOIS,<br>CIRCUIT COURT<br><br>Cook_____ COUNTY | **PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION** | *For Court Use Only* |
|---|---|---|

| Instructions | |
|---|---|
| Enter above the county name where the case was filed. | SHANNON O'BRIEN<br>**Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v.<br><br>FRONTIER AIRLINES, INC., d/b/a FRONTIER AIRLINES<br>**Defendant / Respondent** *(First, middle, last name)* |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* |

**Case Number**

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form. Give them one copy of this blank *Proof of Service* form for each Defendant/Respondent.\*\***

**My name is** _____ **and I state**
　　　　　　　*First, Middle, Last*

☐ **I served the *Summons* and Complaint/Petition on the Defendant/Respondent**

_____ **as follows:**
*First, Middle, Last*

　　☐ Personally on the Defendant/Respondent:
　　　　☐ Male ☐ Female ☐ Non-Binary　Approx. Age: _____ Race: _____
　　　　On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
　　　　Address, Unit#: _____
　　　　City, State, ZIP: _____

　　☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family
　　　　member or lives there:
　　　　On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
　　　　Address, Unit#: _____
　　　　City, State, ZIP: _____
　　　　And left it with: _____
　　　　　　　　　　*First, Middle, Last*
　　　　☐ Male ☐ Female ☐ Non-Binary　Approx. Age: _____ Race: _____
　　　　and by sending a copy to this defendant in a postage-paid, sealed envelope to the
　　　　above address on this date: _____ .

　　☐ On the Corporation's agent, _____
　　　　　　　　　　　　*First, Middle, Last*
　　　　☐ Male ☐ Female ☐ Non-Binary　Approx. Age: _____ Race: _____
　　　　On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
　　　　Address: _____
　　　　City, State, ZIP: _____

☐ **I was not able to serve the *Summons* and Complaint/Petition on Defendant/Respondent:**

_____
*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

2. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

3. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

| | |
|---|---|
| **DO NOT** complete this section. The sheriff or private process server will complete it. | **If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.** |

**By:**

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

_____
*Signature by:*  ☐ Sheriff
                 ☐ Sheriff outside Illinois:

                 _____
                 *County and State*
                 ☐ Special process server
                 ☐ Licensed private detective

**FEES**

| | |
|---|---|
| Service and Return: | $ _____ |
| Miles _____ | $ _____ |
| Total | $ _____ |

_____
*Print Name*

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

FILED
11/14/2023 4:08 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L011612
Calendar, A

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

SHANNON O'BRIEN,                    )
                                    )
              Plaintiff,        )
                                    )   No.: **2023L011612**
v.                                  )
                                    )
FRONTIER AIRLINES, INC., d/b/a      )
FRONTIER AIRLINES,                  )
                                    )
              Defendants.       )
                                    )

## COMPLAINT AT LAW

NOW COMES the Plaintiff, SHANNON O'BRIEN, by and through their attorneys, SALVI, SCHOSTOK & PRITCHARD, P.C., and complaining of Defendant, FRONTIER AIRLINES, INC., d/b/a FRONTIER AIRLINES.

### PARTIES, JURIDICTION AND VENUE

1.     At all times relevant hereto, SHANNON O'BRIEN (hereinafter SHANNON), was an individual residing in Cook County, Illinois.

2.     At all times relevant hereto, Defendant FRONTIER AIRLINES, INC., d/b/a FRONTIER AIRLINES (hereinafter "FRONTIER AIRLINES") was a Colorado corporation.

3.     FRONTIER regularly conducts business in Cook County and owns and operates airplanes which fly throughout the United States and internationally, including Chicago O'Hare International Airport and Midway International Airport.

### FACTS COMMON TO ALL COUNTS

4.     Spinal muscular atrophy (SMA) is a neurodegenerative disease that strikes the motor nerve cells in the spinal cords and affects the voluntary muscle movement used for activities

such as walking, breathing, eating and crawling.

5.  SMA is a progressive disease that causes nerves to atrophy – weaken and shrink – due to inactivity. This atrophy leaves patients with a restricted ability to move and perform basic physical movements and locomotion. The severity of SMA in any one person is highly individualized.

6.  SMA does not impact sensory nerves or the intellect of patients. SMA does not affect a person's ability to think, learn, and build relationships with others.

7.  SMA is diagnosed in approximately 1 in every 11,000 births in the United States; 1 in every 50 Americans is a genetic carrier. The effects of SMA do not discriminate, as SMA can affect any race or gender.

8.  Individuals with SMA must often travel by air to attend work meetings, participate in clinical trials, or for leisure. To do so however, an individual with SMA must surrender their custom mechanized wheelchair – their only means of independent mobility – at the gate before they board a commercial aircraft. The wheelchair is then loaded into the plane's cargo space with all checked luggage.

9.  The mechanized wheelchairs used by persons with SMA and others are customized for the unique needs and size of the person using them. They typically cost tens of thousands of dollars and are difficult to repair or replace.

10. Once an individual surrenders their mechanized wheelchair to board a plane, they are typically forced to wait as everyone else boards the aircraft. The individual is then wheeled into the aircraft in a manual wheelchair which has none of the head support, lateral body support, cushioning, or other assistive devices such as breathing apparatus that many individuals with SMA require.

11.     Once on board an aircraft, there are no accessible lavatories for use. Those who have SMA or other neuromuscular diseases must sit on a regular cushion without lateral restraints for the entire flight and must sit next to someone who will hold them up during takeoff, turbulence and landing.

12.     Upon arrival at the destination, a person with SMA then waits for the entire aircraft to deplane before they are again transferred to another ill-fitting and very uncomfortable manual wheelchair to wait in the terminal for their custom mechanized wheelchair to arrive. When it does, the mechanized wheelchair is often damaged and in many cases, is lost or misplaced.

13.     Because these custom wheelchairs are treated like common luggage by commercial air carriers, they are subject to the same indiscriminate loss and damage that luggage is. According to the U.S. Department of Transportation, airlines on average damaged or destroyed 35 wheelchairs every single day during the month of May.

14.     The experience of commercial flight for a person with SMA – or any individual who relies upon a mechanized wheelchair – can often range from humiliating and dehumanizing to painful. In cases where a custom mechanized wheelchair is lost or stolen, the affected individual is completely robbed of mobility and freedom in a manner that impacts all aspects of their ability to independently live and work.

15.     This experience has been visited upon countless individuals with SMA and others who rely upon mechanized wheelchairs. Media accounts of individuals who have suffered as a result of gross carelessness are well-known throughout the airline industry.[1]

---

[1]

https://www.youtube.com/watch?v=F1ba5j34r-o
https://abcnews.go.com/US/2-travelers-wheelchairs-lost-same-united-airlines-flight/story?id=96780502
https://www.usatoday.com/story/travel/airline-news/2023/08/05/american-airlines-damaged-wheelchair/70519401007/
https://www.travelweekly.com/Travel-News/Airline-News/Poor-handling-wheelchairs-continues-plague-airlines
https://www.washingtonpost.com/travel/2021/06/07/wheelchair-scooter-damage-airplane-flights/

16.     Plaintiff SHANNON O'BRIEN is the Vice President of Community Support at Cure SMA, an organization that provides advocacy, support and research on behalf of individuals diagnosed with Spinal Muscular Atrophy (SMA).[2] SHANNON is also an individual with SMA.

17.     SHANNON leads a busy life, both personally and professionally, and is highly self-sufficient. In her capacity at CURE SMA, she frequently travels throughout the United States to advocate and support people with SMA.

18.     Because SHANNON has SMA, she is unable to walk or hold her head and upper body straight while in a seated position. To meet her most basic needs at work and at home, SHANNON relies upon a highly customized mechanized wheelchair that holds her upper body and head in place and allows SHANNON to move freely, drive, go to work and engage in the activities of her daily life. As is the experience with most individuals with SMA, SHANNON's wheelchair provides her with independence that would otherwise not be possible.

19.     SHANNON is fully dependent on her custom power wheelchair as her *de facto* "legs" to get her around and to keep her comfortable throughout the day. The only times in her life that SHANNON is not in her wheelchair is when she is sleeping, showering, or on an airplane traveling.

20.     SHANNON is always in her wheelchair and is unable go anywhere that is not accessible, as she is extremely uncomfortable and unsafe when not properly supported by her

---

https://www.freep.com/story/news/local/michigan/wayne/2023/05/09/spirit-airlines-loses-ypsilanti-mans-wheelchair-goes-viral-on-reddit/70195568007/
https://globalnews.ca/news/9417590/air-canada-lost-wheelchair-broken-replacement/
https://www.newsweek.com/customer-says-american-airlines-lost-wheelchair-stranded-hours-1744685
https://travelnoire.com/american-airlines-loses-passengers-22k-wheelchair
https://www.businessinsider.com/disability-activist-died-after-united-airlines-destroyed-30k-wheelchair-2021-11
https://www.nbcnewyork.com/news/local/nyc-woman-says-delta-airlines-lost-then-damaged-her-specialized-30000-wheelchair/3798335/

[2] This action is brought by the Plaintiff solely in her individual capacity only.

4

wheelchair and headrest.

21.     Unless SHANNON is in her wheelchair, she is not able to safely eat due to positional swallowing issues.  If her headrest gets moved even slightly, SHANNON gets tension headaches and neck pain due to contractures and muscle tightness.

22.     Although SHANNON must necessarily travel by air for work and leisure, the experience of being on the plane without her wheelchair is extremely challenging. Because SHANNON cannot sit in a supported position on the flight due to muscle weakness, the lack of seating support causes intense tension headaches and muscle pain that persists after a flight.

23.     SHANNON must dehydrate herself prior to a flight, as she has no way of using the bathroom in an airplane.

24.     On November 26, 2022, and at all times relevant hereto, SHANNON was a passenger scheduled to fly on FRONTIER Flight 81 flying from Punta Cana International Airport to Chicago O'Hare International Airport (hereinafter "O'Hare") at 2:30pm. On November 26, 2022, SHANNON gate-checked her custom power wheelchair in Punta Cana around 3:45pm (2:45pm EST) to board Frontier Flight 81 direct from PUJ (Punta Cana) to ORD (Chicago O'Hare) with 28 other family members and friends to return home from a holiday vacation.

25.     Upon takeoff, SHANNON's plane experienced a hydraulic mechanical malfunction and had to make an emergency landing in Orlando, Florida.

26.     After making an emergency landing in Orlando around 7:15pm EST, SHANNON was kept on the plane for over an hour waiting for her own wheelchair to arrive.

27.     After waiting for more than an hour, Frontier Airlines personnel failed to deliver her mechanized wheelchair. Frontier Airlines personnel then brought SHANNON off the plane in an unsafe manual transport wheelchair that had no lateral or head support, while other passengers

5

were taken to a baggage carousel for baggage reclaim. SHANNON was told she could retrieve her wheelchair at baggage claim.

28.     SHANNON was then taken through customs and brought to a baggage carousel where we she told she would be able to retrieve her wheelchair and sent home on a new flight. When SHANNON arrived at baggage claim, however, her wheelchair was not there.

29.     After waiting at baggage with other passengers for nearly two hours, Defendant FRONTIER AIRLINES announced that no bags would be removed from the plane and that they would arrive in Chicago the next day on another flight.

30.     Prior to SHANNON arriving at the baggage area with the other passengers, one of the Frontier workers made an announcement at the baggage carousel to all of the passengers (which included many of her relatives) that because the passenger in the wheelchair had not deboarded the plane, all luggage retrieval was delayed. This statement was false and served no purpose other than to scapegoat SHANNON for the unfolding series of failures that occurred on the flight.

31.     By the time SHANNON arrived at a security checkpoint, there were no TSA agents on duty. SHANNON then waited for another 30-60 minutes in pain from being in the manual transport wheelchair while TSA agents were located.

32.     When SHANNON arrived at the new assigned gate, every restaurant and shop was closed and there were no vending machines available to obtain food or water.

33.     Although there was a plane ready to depart at the new gate, the assigned flight crew had "timed out" due to the inordinate delays. During this time SHANNON was forced to sit, in increasing pain, in the manual transport chair with only a few pillows SHANNON had borrowed from other passengers to try and support her head for over ten hours.

6

34.     When SHANNON's sister/caretaker protested these conditions and alerted Frontier staff of the pain and discomfort SHANNON was in, she was told by the gate agent that retrieval of SHANNON'S wheelchair was not a priority and would not be on board SHANNON's flight home.

35.     This demoralizing comment prompted SHANNON to request a disability advocate who arrived as SHANNON was about to board the new flight. This individual claimed, falsely, that SHANNON'S mechanized wheelchair had actually been transferred to the cargo hold of the new plane and would arrive with her in Chicago.

36.     Skeptical, SHANNON pressed the issue until the representative confirmed over her two-way radio that the cargo hold was completely empty for the new flight, that her chair was still on the original plane, and that it would not be removed until that Sunday. SHANNON was further assured by the representative that her wheelchair would be on the next Frontier flight Monday morning. SHANNON repeatedly explained how medically necessary her chair was for her safety, comfort and well-being to no avail.

37.     After landing in Chicago Sunday late morning, SHANNON was driven home by being placed in the front seat of a regular car and taken home to wait in bed to hear whether her wheelchair made it on the flight. SHANNON never received the call and was unable to rouse a single Frontier worker to address the problem.

38.     Eventually, SHANNON was told the wheelchair would arrive at Midway Airport, a much longer drive from her home in Des Plaines. Relying on this information, SHANNON went to Midway Airport with family members to retrieve her wheelchair as promised, only to learn upon her arrival that the wheelchair was still in Orlando and would not arrive until the next day.

39.     As SHANNON'S ordeal with FRONTIER AIRLINES continued unabated, it was

7

only when SHANNON shared her story on social media and later in a television interview that Defendant FRONTIER AIRLINES finally arranged delivery of the wheelchair at O'Hare Airport.

40.     The wheelchair arrived in a partially disassembled state and with damage to the footplate.

41.     In total, SHANNON was without her wheelchair for approximately 53 hours. The inordinate delay and conscious disregard for SHANNON'S health and safety demonstrated by Defendant FRONTIER AIRLINES caused her continuous physical pain and emotional anguish.

42.     Because SHANNON was unjustly deprived of her wheelchair, SHANNON missed an important appointment for a catheter change at a local hospital on Monday November 28th.

43.     Because SHANNON was unable to get rescheduled for another three weeks, she experienced further pain, discomfort and an increase in bladder spasms.

## COUNT I – NEGLIGENCE

### *Negligence – Frontier Airlines*

1.     Plaintiff adopts, re-alleges, and incorporates by reference paragraphs 1-43 of the Facts Common to All Counts as though fully set forth herein.

2.     At all times relevant hereto, FRONTIER had a duty of care to ensure that SHANNON was not deprived of her wheelchair and thus, her mobility, beyond the time necessary for point-to-point travel.

3.     At all times relevant hereto, FRONTIER had a duty of care to ensure that SHANNON was not unnecessarily subjected to pain, discomfort, emotional distress and inconvenience due to its careless handling of SHANNON's wheelchair.

4.     At all times relevant, FRONTIER owed a duty to SHANNON and other disabled

8

passengers, to abide by the standard of care established by the Air Carrier Access Act (ACAA) and the Americans With Disabilities Act (ACA).

5.      Notwithstanding the aforesaid duties, at the time and place aforesaid, FRONTIER was negligent and/or careless in one or more of the following respects:

    a.  Failed to monitor and keep track of the subject wheelchair;

    b.  Failed to timely locate and return the subject wheelchair;

    c.  On numerous occasions, misinformed SHANNON as to the location of her wheelchair and its arrival time;

    d.  Failed to comport with the standard of care established by the ACAA with respect to assisting disabled passengers; and

    e.  Failed to provide for proper stowage of personal requirements related to individual's disability in violation of 14 C.F.R. 382.

6.      As a direct and proximate result of one or more of the foregoing negligent and/or careless acts/or omissions, SHANNON experienced physical pain, protracted physical discomfort and emotional distress.

7.      As a direct and proximate cause of one or more of the foregoing negligent and/or careless acts/or omissions, SHANNON was bed-ridden for two days and endured conscious suffering and emotional distress.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against FRONTIER, for a sum in excess of the jurisdictional minimum of the Law Division of the Circuit Court of Cook County, Illinois; award Plaintiff her costs; and grant any other such relief the court deems just.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Respectfully Submitted,

SALVI, SCHOSTOK & PRITCHARD, P.C.


By: /s/ *Lance D. Northcutt*
        One of the Attorneys for Plaintiff

Lance D. Northcutt (ARDC #6278144)
SALVI, SCHOSTOK & PRITCHARD P.C.
161 N. Clark St., Suite 4700
Chicago, IL 60601
Phone: (312) 372-1227
Fax: (312) 372-3720
lnorthcutt@salvilaw.com
Firm No. 34560

FILED
11/14/2023 4:08 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L011612
Calendar, A
25207400

FILED DATE: 11/14/2023 4:08 PM   2023L011612

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| SHANNON O'BRIEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No.: 2023L011612 |
| v. | ) |
| | ) |
| FRONTIER AIRLINES, INC., d/b/a | ) |
| FRONTIER AIRLINES, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## AFFIDAVIT PURSUANT TO SUPREME COURT RULE 222(B)

Pursuant to Supreme Court Rule 222(B), counsel for the above-named Plaintiff certifies

that the Plaintiff seeks money damages in excess of $50,000.00.

### FURTHER AFFIANT SAYETH NOT.

_____
Lance D. Northcutt

SUBSCRIBED AND SWORN TO
before me this **14** day of November, 2023.

_____
NOTARY PUBLIC

OFFICIAL SEAL
JENNIFER STOLARZ
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES October 26, 2026

Lance D. Northcutt (ARDC #6278144)
SALVI, SCHOSTOK & PRITCHARD P.C.
161 N. Clark St., Suite 4700
Chicago, IL 60601
Phone: (312) 372-1227
Fax: (312) 372-3720
lnorthcutt@salvilaw.com
Firm No. 34560

FILED DATE: 11/16/2023 2:29 PM   2023L011612

IN THE COOK COUNTY CIRCUIT COURT, STATE OF ILLINOIS

FILED
11/16/2023 2:29 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L011612
Calendar, A
25243224

**SHANNON O'BRIEN**

Plaintiff/Petitioner

vs.

**FRONTIER AIRLINES, INC D/B/A FRONTIER AIRLINES**
Defendant/Respondent

Case No.:        **2023L011612**

**AFFIDAVIT OF SERVICE OF
SUMMONS; COMPLAINT**

I, **David Rome**, depose and say the following:

I certify that I am over the age of eighteen. I am not a party to the above action. I am a registered employee of ABC Legal Services, LLC 633 Yesler Way Seattle, WA 98104 License No 117-001765 or I am a registered private detective or a registered employee of a private detective agency.

On the **16th day of November, 2023 at 1:08 PM**, I, **David Rome**, **SERVED FRONTIER AIRLINES, INC., d/b/a FRONTIER AIRLINES c/o Corporation Service Company, REGISTERED AGENT** at **1900 West Littleton Boulevard, Littleton, Arapahoe County, CO 80120** in the manner indicated below:

**CORPORATE SERVICE**, by personally delivering **1** copy(ies) of the above listed documents to the named Corporation, by serving **Corporation Service Company, REGISTERED AGENT**, on behalf of said Corporation.
THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**I delivered the documents to Corporation Service Company, REGISTERED AGENT with identity confirmed by subject showing identification. The individual accepted service with security camera (documents left, seen by subject). The individual appeared to be a male contact.**

Service Fee Total: **$75.00**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this affidavit are true and correct.

NAME: _David Rome_ _____        11/16/2023
David Rome                Server ID #                Date

REF: **REF-14179515**
Tracking #: **0118315237**

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, A

FILED DATE: 12/14/2023 2:36 PM  2023L011612

FILED
12/14/2023 2:36 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L011612
Calendar, A
25605270

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| SHANNON O'BRIEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2023 L 11612 |
| | ) | |
| FRONTIER AIRLINES, INC., d/b/a | ) | JURY DEMAND |
| FRONTIER AIRLINES. | ) | |
| | ) | |
| Defendants. | | |

**APPEARANCE**

The undersigned enters the appearance of Defendant, FRONTIER AIRLINES.

Brian T. Maye
Kurt C. Schlueter
Brittany N. Christianson

**Name:** HINSHAW & CULBERTSON LLP
**Attorney for:** Frontier Airlines
**Address:** 151 North Franklin Street, Suite 2500
**City:** Chicago, IL 60606
**Telephone:** 312-704-3000
**Atty No.:** 90384

I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

/s/ *Brian T. Maye*
Attorneys for Frontier Airlines

Brian T. Maye
bmaye@hinshawlaw.com
Kurt C. Schlueter
kschlueter@hinshawlaw.com
Brittany N. Christianson
bchristianson@hinshawlaw.com
HINSHAW & CULBERTSON LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
312-704-3000
312-704-3001 (fax)

FILED DATE: 12/14/2023 2:36 PM   2023L011612

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was filed and served electronically via Odyssey e-file to all counsel of record on or before December 14, 2023.

<u>*s/Donna M. Ruane*</u>

FILED DATE: 12/14/2023 2:36 PM   2023L011612

FILED
12/14/2023 2:36 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L011612
Calendar, A
25605270

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| SHANNON O'BRIEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2023 L 11612 |
| | ) |
| FRONTIER AIRLINES, INC., d/b/a | ) |
| FRONTIER AIRLINES. | ) |
| | ) |
| Defendants. | |

## DEFENDANT FRONTIER AIRLINES' ANSWER TO PLAINTIFF'S COMPLAINT

Now Comes Defendant, FRONTIER AIRLINES, by and through its attorneys, HINSHAW

& CULBERTSON, LLC and as and for its Answer to Plaintiff's Complaint, states as follows:

### PARTIES, JURISDICTION AND VENUE

1.      At all times relevant hereto, SHANNON O'BRIEN (hereinafter SHANNON), was

an individual residing in Cook County, Illinois.

**ANSWER: Frontier lacks knowledge and information sufficient to form a belief as to**

**the truth of the allegations contained in Paragraph 1 of the Complaint, and therefore, denies**

**the same.**

2.      At all times relevant hereto, Defendant FRONTIER AIRLINES, INC. d/b/a

FRONTIER AIRLINES (hereinafter "FRONTIER AIRLINES") was a Colorado corporation.

**ANSWER:      Frontier admits the allegations of Paragraph 2 of Plaintiff's Complaint.**

3.      FRONTIER regularly conducts business in Cook County and owns and operates

airplanes which fly throughout the United States and internationally, including Chicago O'Hare

International Airport and Midway International Airport.

FILED DATE: 12/14/2023 2:36 PM   2023L011612

**ANSWER:     Fronter admits only that it is an air carrier that operates flights to and from Chicago – O'Hare International Airport. The remaining allegations contained in Paragraph 3 of Plaintiff's Complaint are denied.**

## FACTS COMMON TO ALL COUNTS

4.      Spinal muscular atrophy (SMA) is a neurodegenerative disease that strikes the motor nerve cells in the spinal cords and affects the voluntary muscle movement used for activities such as walking, breathing, eating and crawling.

**ANSWER:     Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint, and therefore, denies the same.**

5.      SMA is a progressive disease that causes nerves to atrophy – weaken and shrink – due to inactivity.  This atrophy leaves patients with a restricted ability to move and perform basic physical movements and locomotion.   The severity of SMA in any one person is highly individualized.

**ANSWER:     Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of the Complaint, and therefore, denies the same.**

6.      SMA does not impact sensory nerves or the intellect of patients.  SMA does not affect a person's ability to think, learn and build relationships with others.

**ANSWER:     Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6 of the Complaint, and therefore, denies the same.**

FILED DATE: 12/14/2023 2:36 PM   2023L011612

7.     SMA is diagnosed in approximately 1 in every 11,000 births in the United States; 1 in every 50 Americans is a genetic carrier.  The effects of SMA do not discriminate, as SMA can affect any race or gender.

**ANSWER:     Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint, and therefore, denies the same.**

8.     Individuals with SMA must often travel by air to attend work meetings, participate in clinical trials, or for leisure.  To do so however, an individual with SMA must surrender their custom mechanized wheelchair – their only means of independent mobility – at the gate before they board a commercial aircraft.  The wheelchair is then loaded into the plane's cargo space with all checked luggage.

**ANSWER:     Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint, and therefore, denies the same.**

9.     The mechanized wheelchairs used by persons with SMA and others are customized for the unique needs and size of the person using them.  They typically cost tens of thousands of dollars and are difficult to repair or replace.

**ANSWER:     Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the Complaint, and therefore, denies the same.**

10.     Once an individual surrenders their mechanized wheelchair to board a plane, they are typically forced to wait as everyone else boards the aircraft.  The individual is then wheeled into the aircraft in a manual wheelchair which has none of the head support, lateral body support,

3

FILED DATE: 12/14/2023 2:36 PM    2023L011612

cushioning, or other assistive devices such as breathing apparatus that many individuals with SMA require.

**ANSWER:     Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint, and therefore, denies the same.**

11.     Once on board an aircraft, there are no accessible lavatories for use.  Those who have SMA or other neuromuscular diseases must sit on a regular cushion without lateral restraints for the entire flight and must sit next to someone who will hold them up during takeoff, turbulence and landing.

**ANSWER:     Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint, and therefore, denies the same.**

12.     Upon arrival at the destination, a person with SMA then waits for the entire aircraft to deplane before they are again transferred to another ill-fitting and very uncomfortable manual wheelchair to wait in the terminal for their custom mechanized wheelchair to arrive.  When it does, the mechanized wheelchair is often damaged and in many cases, is lost or misplaced.

**ANSWER:     Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint, and therefore, denies the same.**

13.     Because these custom wheelchairs are treated like common luggage by commercial air carriers, they are subject to the same indiscriminate loss and damage that luggage is.  According to the U.S. Department of Transportation, airlines on average damaged or destroyed 35 wheelchairs every single day during the month of May.

**ANSWER:** **Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Complaint, and therefore, denies the same.**

14.     The experience of commercial flight for a person with SMA – or any individual who relies upon a mechanized wheelchair – can often range from humiliating and dehumanizing to painful.  In cases where a custom mechanized wheelchair is lost or stolen, the affected individual is completely robbed of mobility and freedom in a manner that impacts all aspects of their ability to independently live and work.

**ANSWER:** **Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint, and therefore, denies the same.**

15.     This experience has been visited upon countless individuals with SMA and other who rely upon mechanized wheelchairs.  Media accounts of individuals who have suffered as a result of gross carelessness are well-known throughout the airline industry.[1]

---

[1] https://www.youtube.com/watch?v=Flba5134r-o
https://abcnews.go.com/US/2-travelers-wheelchairs-lost-same-united-airlines-flight/story?id=96780502
https://www.usatoday.com/story/travel/airline-news/2023/08/05/american-airlines-damaged-   wheelchair/70519401007/
https://www.travelweekly.com/Travel-News/Airline-News/Poor-handling-wheelchairs-continues-plague-airlines
https://www.washingtonpost.com/travel/2021/06/07/wheelchair-scooter-damage-airplane-flights
https://www.freep.com/storv/news/local/michigan/wayne/2023/05/09/spirit-airlines-loses-ypsilanti-mans-wheelchair-goes-viral-on-reddit/70195 568007/
https://globalnews.ca/news/9417590/air-canada-lost-wheelchair-broken-replacement/
https://www newsweek.com/customer-says-american-airlines-lost-wheelchair-stranded-hours-1744685
https://travelnoire.com/american-airlines-loses-passengers-22k-wheelchair
https://www businessinsider.com/disability-activist-died-after-united-airlines-destroyed-30k-wheelchair-2021-11
https://www nbcnewyork.com/news/local/nyc-woman-sUs-delta-airlines-lost-then-damaged-her-specialized-30000-wheelchair/3798335/

FILED DATE: 12/14/2023 2:36 PM    2023L011612

**ANSWER:** **Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint, and therefore, denies the same.**

16.     Plaintiff, SHANNON O'BRIEN is the Vice President of Community Support at Cure SMA, an organization that provides advocacy, support and research on behalf of individuals diagnosed with Spinal Muscular Atrophy (SMA).  SHANNON is also an individual with SMA.[2]

**ANSWER:** **Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint, and therefore, denies the same.**

17.     SHANNON leads a busy life, both personally and professionally, and is highly self-sufficient.  In her capacity at CURE SMA, she frequently travels through the United States to advocate and support people with SMA.

**ANSWER: Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint, and therefore, denies the same.**

18.     Because SHANNON has SMA, she is unable to walk or hold her head and upper body straight while in a seated position.  To meet her most basic needs at work and at home, SHANNON relies upon a highly customized mechanized wheelchair that holds her upper body and head in place and allows SHANNON to move freely, drive, go to work and engage in the activities of her daily life.  As is the experience with most individuals with SMA, SHANNON's wheelchair provides her with independence that would otherwise not be possible.

---

[2] This action is brought by the Plaintiff solely in her individual capacity only.

FILED DATE: 12/14/2023 2:36 PM    2023L011612

**ANSWER:** Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint, and therefore, denies the same.

19. SHANNON is fully dependent on her custom power wheelchair as her *de facto* "legs" to get her around and to keep her comfortable throughout the day. The only times in her life that SHANNON is not in her wheelchair is when she is sleeping, showering, or on an airplane traveling.

**ANSWER:** Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Complaint, and therefore, denies the same.

20. SHANNON is always in her wheelchair and is unable to go anywhere that is not accessible, as she is extremely uncomfortable and unsafe when not properly supported by her wheelchair and headrest.

**ANSWER:** Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint, and therefore, denies the same.

21. Unless SHANNON is in her wheelchair, she is not able to safely eat due to positional swallowing issues. If her headrest gets moved even slightly, SHANNON gets tension headaches and neck pain due to contractures and muscle tightness.

**ANSWER:** Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint, and therefore, denies the same.

FILED DATE: 12/14/2023 2:36 PM    2023L011612

22.     Although SHANNON must necessarily travel by air for work and leisure, the experience of being on the plane without her wheelchair is extremely challenging.  Because SHANNON cannot sit in a supported position on the flight due to muscle weakness, the lack of seating support causes intense tension headaches and muscle pain that persists after a flight.

**ANSWER:     Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint, and therefore, denies the same.**

23.     SHANNON must dehydrate herself prior to a flight, as she has no way of using the bathroom in an airplane.

**ANSWER:     Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint, and therefore, denies the same.**

24.     On November 26, 2022, and at all times relevant hereto, SHANNON was a passenger scheduled to fly on FRONTIER Flight 81 flying from Punta Cana International Airport to Chicago O'Hare International Airport (hereinafter "O'Hare") at 2:30 pm.  On November 26, 2022, SHANNON gate-checked her custom power wheelchair in Punta Cana around 3:45 pm (2:45 pm EST) to board Frontier Flight 81 direct from PUJ (Punta Cana) to ORD (Chicago O'Hare) with 28 other family members and friends to return home form a holiday vacation.

**ANSWER:     Upon information and belief, Frontier admits that on November 26, 2022, Shannon O'Brien was a ticketed passenger onboard Frontier Flight 81 traveling from Punta Cana, Dominican Republic to Chicago, Illinois. Frontier lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 24 of the Complaint, and therefore, denies the same.**

25.     Upon takeoff, SHANNON's plane experienced a hydraulic mechanical malfunction and had to make an emergency landing in Orlando, Florida.

**ANSWER:     Frontier admits that the aircraft experienced a hydraulic mechanical malfunction during Frontier Flight 81. Frontier denies the remaining allegations in Paragraph 25 of Plaintiff's Complaint.**

26.     After making an emergency landing in Orlando around 7:15 pm EST, SHANNON was kept on the plane for over an hour waiting for her own wheelchair to arrive.

**ANSWER:     Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Complaint, and therefore, denies the same.**

27.     After waiting for more than an hour, Frontier Airlines personnel failed to deliver her mechanized wheelchair. Frontier Airlines personnel then brought SHANNON off the plane in an unsafe manual transport wheelchair that had no lateral or head support, while other passengers were taken to a baggage carousel for baggage reclaim. SHANNON was told she could retrieve her wheelchair at baggage claim.

**ANSWER:     Frontier denies the allegations contained in Paragraph 27 of Plaintiff's Complaint.**

28.     SHANNON was then taken through customs and brought to a baggage carousel where we she told she would be able to retrieve her wheelchair and sent home on a new flight. When SHANNON arrived at baggage claim, however, her wheelchair was not there.

**ANSWER:     Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 of the Complaint, and therefore, denies the same.**

FILED DATE: 12/14/2023 2:36 PM    2023L011612

FILED DATE: 12/14/2023 2:36 PM    2023L011612

29.     After waiting at baggage with other passengers for nearly two hours, Defendant FRONTIER AIRLINES announced that no bags would be removed from the plane and that they would arrive in Chicago the next day on another flight.

**ANSWER:    Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 of the Complaint, and therefore, denies the same.**

30.     Prior to SHANNON arriving at the baggage area with the other passengers, one of the Frontier workers made an announcement at the baggage counsel to all of the passengers (which included many of her relatives) that because the passenger in the wheelchair had not deboarded the plane, all luggage retrieval was delayed.  This statement was false and served no purpose other than to scapegoat SHANNON for the unfolding series of failures that occurred on the flight.

**ANSWER:    Frontier denies the allegations contained in Paragraph 30 of Plaintiff's Complaint.**

31.     By the time SHANNON arrived at a security checkpoint, there was no TSA agents on duty.  SHANNON then waited another 30-60 minutes in pain from being in the manual transport wheelchair while TSA agents were located.

**ANSWER:    Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 of the Complaint, and therefore, denies the same.**

32.     When SHANNON arrived at the new assigned gate, every restaurant and shop was closed and there were no vending machines available to obtain food or water.

**ANSWER:** **Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the Complaint, and therefore, denies the same.**

33. Although there was a plane ready to depart at the new gate, the assigned flight crew had "timed out" due to the inordinate delays. During this time SHANNON was forced to sit, in increasing pain in the manual transport chair with only a few pillows SHANNON had borrowed from other passengers to try and support her head for over ten hours.

**ANSWER:** **Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint, and therefore, denies the same.**

34. When SHANNON's sister/caretaker protested these conditions and alerted Frontier staff of the pain and discomfort SHANNON was in, she was told by the gate agent that retrieval of SHANNON'S wheelchair was not a priority and would not be on board SHANNON's flight home.

**ANSWER:** **Frontier denies the allegations contained in Paragraph 34 of Plaintiff's Complaint.**

35. This demoralizing comment prompted SHANNON to request a disability advocate who arrived as SHANNON was about to board the new flight. This individual claimed, falsely, that SHANNON's mechanized wheelchair had actually been transferred to the cargo hold of the new plane and would arrive with her in Chicago.

**ANSWER:** **Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 of the Complaint, and therefore, denies the same.**

FILED DATE: 12/14/2023 2:36 PM    2023L011612

FILED DATE: 12/14/2023 2:36 PM 2023L011612

36.     Skeptical, SHANNON pressed the issue until the representative confirmed over her two-way radio that the cargo hold was completely empty for the new flight, that her chair was still on the original plane, and that it would not be removed until that Sunday.  SHANNON was further assured by the representative that her wheelchair would be on the next Frontier flight Monday morning.  SHANNON repeatedly explained how medically necessary her chair was for her safety, comfort and well-being to no avail.

**ANSWER:     Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 of the Complaint, and therefore, denies the same.**

37.     After landing in Chicago Sunday late morning, SHANNON was driven home by being placed in the front seat of a regular car and taken home to wait in bed to hear whether her wheelchair made it on the flight.   SHANNON never received the call and was unable to rouse a single Frontier worker to address the problem.

**ANSWER:     Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37 of the Complaint, and therefore, denies the same.**

38.     Eventually, SHANNON was told the wheelchair would arrive at Midway Airport, a much longer drive from her home in Des Plaines.  Relying on this information, SHANNON went to Midway Airport with family members to retrieve her wheelchair as promised, only to learn upon her arrival that the wheelchair was still in Orlando and would not arrive until the next day.

**ANSWER:     Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 of the Complaint, and therefore, denies the same.**

FILED DATE: 12/14/2023 2:36 PM    2023L011612

39.     As SHANNON's ordeal with FRONTIER AIRLINES continued unabated, it was only when SHANNON shared her story on social media and later on a television interview that Defendant FRONTIER AIRLINES finally arranged delivery of the wheelchair at O'Hare Airport.

**ANSWER:     Frontier denies the allegations contained in Paragraph 39 of Plaintiff's Complaint.**

40.     The wheelchair arrived in a partially assembled state and with damage to the footplate.

**ANSWER:     Frontier denies the allegations contained in Paragraph 40 of Plaintiff's Complaint.**

41.     In total, SHANNON was without her wheelchair for approximately 53 hours. The inordinate delay and conscious disregard for SHANNON's health and safety demonstrated by Defendant FRONTIER AIRLINES caused her continuous physical pain and emotional anguish.

**ANSWER:     Frontier denies the allegations contained in Paragraph 41 of Plaintiff's Complaint.**

42.     Because SHANNON was unjustly deprived of her wheelchair, SHANNON missed an important appointment for a catheter change at a local hospital on Monday November 28th.

**ANSWER:     Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 42 of the Complaint, and therefore, denies the same.**

43.     Because SHANNON was unable to get rescheduled for another three weeks, she experienced further pain, discomfort and an increase in bladder spasms.

FILED DATE: 12/14/2023 2:36 PM 2023L011612

**ANSWER:** **Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43 of the Complaint, and therefore, denies the same.**

## COUNT I – NEGLIGENCE

### *Negligence – Frontier Airlines*

1. Plaintiff adopts, realleges, and incorporates by reference paragraphs 1-43 of the Facts Common to All Counts as though fully set forth herein.

**ANSWER:** **Frontier incorporates its Answers to Paragraphs 1-43 as fully set forth herein.**

2. At all times relevant hereto, FRONTIER had a duty of care to ensure that SHANNON was not deprived of her wheelchair and thus, her mobility, beyond the time necessary for point-to-point travel.

**ANSWER:** **Paragraph 2 of Count I of Plaintiff's Complaint contains conclusions of law to which no response is required. To the extent that a response is deemed required, Frontier admits only those duties imposed upon it by applicable law and denies all other allegations contained in Paragraph 2 of Count I of Plaintiff's Complaint.**

3. At all times relevant hereto, FRONTIER had a duty of care to ensure that SHANNON was not unnecessarily subjected to pain, discomfort, emotional distress and inconvenience due to its careless handling of SHANNON'S wheelchair.

**ANSWER:** **Paragraph 3 of Count I of Plaintiff's Complaint contains conclusions of law to which no response is required. To the extent that a response is deemed required, Frontier admits only those duties imposed upon it by applicable law and denies all other allegations contained in Paragraph 3 of Count I of Plaintiff's Complaint.**

14

FILED DATE: 12/14/2023 2:36 PM    2023L011612

4.      At all times relevant, FRONTIER owed a duty to SHANNON and other disabled passengers, to abide by the standard of care established by the Air Carrier Access Act (ACAA) and the Americans With Disabilities Act (ACA).

**ANSWER:      Paragraph 4 of Count I of Plaintiff's Complaint contains conclusions of law to which no response is required. To the extent that a response is deemed required, Frontier admits only those duties imposed upon it by applicable law and denies all other allegations contained in Paragraph 3 of Count I of Plaintiff's Complaint.**

5.      Notwithstanding the aforesaid duties, at the time and place aforesaid, FRONTIER was negligent and/or careless in one or more of the following respects:

a.      Failed to monitor and keep track of the subject wheelchair;
b.      Failed to timely locate and return the subject wheelchair;
c.      On numerous occasions, misinformed SHANNON as to the location of her wheelchair and its arrival time;
d.      Failed to comport with the standard of care established by the ACAA with respect to assisting disabled passengers; and
e.      Failed to provide for proper stowage of personal requirements related to individual's disability in violation of 14 C.F.R. 382.

**ANSWER:        Frontier denies the allegations contained in Paragraph 5 of Count I of Plaintiff's Complaint, including subparagraphs 5(a) – 5(e).**

6.      As a direct and proximate result of one or more of the foregoing negligent and/or careless acts/or omissions, SHANNON experienced physical pain, protracted physical discomfort and emotional distress.

**ANSWER:      Frontier denies the allegations contained in Paragraph 6 of Count I of Plaintiff's Complaint.**

FILED DATE: 12/14/2023 2:36 PM    2023L011612

7.     As a direct and proximate cause of one or more of the foregoing negligent and/or careless acts/or omissions, SHANNON was bed-ridden for two days and endured conscious suffering and emotional distress.

**ANSWER:     Frontier denies the allegations contained in Paragraph 7 of Count I of Plaintiff's Complaint.**

## GENERAL DENIAL

Frontier denies all allegations of Plaintiff's Complaint that are not specifically admitted above.

## AFFIRMATIVE DEFENSES

Pleading in the alternative, and without prejudice to its denials asserted above in its Answer, Defendant FRONTIER AIRLINES, INC. ("Frontier"), hereby raises, asserts, and preserves the following Affirmative Defenses to Plaintiff's Complaint:

## FIRST AFFIRMATIVE DEFENSE

1.     Plaintiff alleges she was a passenger on Frontier Flight 81 traveling from Punta Cana, Dominican Republic to Chicago, Illinois O'Hare International Airport on November 26, 2022.

2.     Plaintiff alleges she sustained damages as a result of the delay in the arrival of her motorized wheelchair in Chicago, Illinois.

3.     Plaintiff's claims against Frontier are preempted, in whole or in part, by federal law, federal regulations, and federal standards of care applicable to flight operations and safety.

WHEREFORE, Defendant, FRONTIER AIRLINES, INC., requests that this Court dismiss this action with prejudice and award Defendant the costs it has incurred in the defense of this matter, and for any other relief that this Court deems just and equitable.

FILED DATE: 12/14/2023 2:36 PM    2023L011612

## SECOND AFFIRMATIVE DEFENSE

1.      Plaintiff alleges she was a passenger on Frontier Flight 81 traveling from Punta Cana, Dominican Republic to Chicago, Illinois O'Hare International Airport on November 26, 2022.

2.      Plaintiff alleges she sustained damages as a result of the delay in the arrival of her motorized wheelchair in Chicago, Illinois.

3.      The acts and omissions of a third-party for whom Frontier is not responsible and over whom Frontier has no control were the sole proximate cause of the events described in Plaintiff's Complaint.

4.      Therefore, Frontier is not responsible for any of Plaintiff's alleged damages.

WHEREFORE, Defendant, FRONTIER AIRLINES, INC., requests that this Court dismiss this action with prejudice and award Defendant the costs it has incurred in the defense of this matter, and for any other relief that this Court deems just and equitable.

## RESERVATION OF FURTHER DEFENSES

Frontier reserves the right to supplement and amend its Answer and to assert any and all affirmative defenses as may be revealed by further investigation, discovery, and determination of the substantive law that will be governing this case.

## JURY DEMAND

Without waiving its objections set forth herein, Frontier hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

HINSHAW & CULBERTSON, LLP

 /s/*Brian T. Maye*
Attorneys for Frontier Airlines

17

FILED DATE: 12/14/2023 2:36 PM   2023L011612

Brian T. Maye
bmaye@hinshawlaw.com
Kurt C. Schlueter
kschlueter@hinshawlaw.com
Brittany N. Christianson
bchristianson@hinshawlaw.com
HINSHAW & CULBERTSON LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
312-704-3000
312-704-3001 (fax)

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, A

FILED DATE: 12/14/2023 2:36 PM   2023L011612

FILED
12/14/2023 2:36 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L011612
Calendar, A
25605270

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| SHANNON O'BRIEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2023 L 11612 |
| | ) |
| FRONTIER AIRLINES, INC., d/b/a | ) |
| FRONTIER AIRLINES. | ) |
| | ) |
| Defendants. | ) |

### NOTICE OF FILING

**TO:**   **SERVICE LIST ATTACHED**

**PLEASE TAKE NOTICE** that on December 14, 2023, we filed with the Circuit Court of Cook County Illinois, County Department, Law Division, Defendant, Frontier Airlines' Appearance and Answer to Plaintiff's Complaint at Law, in the above-captioned matter, a copy of which is attached hereto.

HINSHAW & CULBERTSON LLP

By:   *Brian T. Maye*
_____

Attorneys for Defendant, Frontier Airlines

Brian T. Maye (bmaye@hinshawlaw.com)
Kurt C. Schlueter (kschlueter@hinshawlaw.com)
Brittany N. Christianson (bchristianson@hinshawlaw.com)
HINSHAW & CULBERTSON LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
312-704-3000
312-704-3001 (fax)
Attorney No. 90384

### PROOF OF SERVICE

The undersigned states on oath that on December 14, 2023, this Notice and referred to document was served by emailing a copy of same to each person to whom it is directed.

[x]   Under penalties as provided by law pursuant to
Section 1-109 of the Illinois Code of Civil Procedure,
I certify that the statements set forth herein are true and correct.

*Donna M. Ruane*
_____
Donna M. Ruane

FILED DATE: 12/14/2023 2:36 PM   2023L011612

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| SHANNON O'BRIEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2023 L 11612 |
| | ) | |
| FRONTIER AIRLINES, INC., d/b/a | ) | |
| FRONTIER AIRLINES. | ) | |
| | ) | |
| Defendants. | | |

## SERVICE LIST

**Attorneys for Plaintiff**

Lance D. Northcutt
Salvi, Schostok & Pritchard P.C.
161 N. Clark Street, Suite 4700
Chicago, IL  60601
(312) 372-1227
(312) 372-3720
lnorthcutt@salvilaw.com

61560\315565848.v1

Date: 12/21/2023

CIRCUIT COURT OF COOK COUNTY
LAW DIV. RM. 801,  DALEY CENTER.
 CHICAGO IL-60602

O'Brien Shannon


 -
NorthcuttLance D.
lnorthcutt@salvilaw.com

      Notice of In Person Case Management

CASE: 2023L011612 / Shannon O'Brien -vs- Frontier Airlines, Inc., d/b/a Frontier Airlines

All Law Division Motion Calendar Initial Case Management dates will be held In Person,
In-Person Court Date: Wednesday  January  24  2024  10:00 AM
 Room Court Room 2206 Calendar  A

For all questions on the initial CMC date,
email: LAW.CALAcc@cookcountyil.gov or phone: (312) 603-6348

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, A

FILED
12/22/2023 8:31 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L011612
Calendar, A
25709271

FILED DATE: 12/22/2023 8:31 AM   2023L011612

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| SHANNON O'BRIEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2023 L 11612 |
| | ) |
| FRONTIER AIRLINES, INC., d/b/a | ) |
| FRONTIER AIRLINES. | ) |
| | ) |
| Defendants. | |

### CERTIFICATE OF SERVICE

**To:**   **See attached Service List**

I, Donna M. Ruane, a non-attorney, do hereby affirm under oath that on December 22, 2023, I served via email to all counsel of record, a copy of the following:

**DEFENDANT FRONTIER AIRLINES, INC.'S FIRST SET OF**
**REQUESTS TO ADMIT TO PLAINTIFF SHANNON O'BRIEN**

*Donna M. Ruane*

Brian T. Maye (bmaye@hinshawlaw.com)
Kurt C. Schlueter (kschlueter@hinshawlaw.com)
Brittany N. Christianson (bchristianson@hinshawlaw.com)
HINSHAW & CULBERTSON LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
312-704-3000
312-704-3001 (fax)
Attorney No. 90384

FILED DATE: 12/22/2023 8:31 AM   2023L011612

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| SHANNON O'BRIEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2023 L 11612 |
| | ) |
| FRONTIER AIRLINES, INC., d/b/a | ) |
| FRONTIER AIRLINES. | ) |
| | ) |
| Defendants. | |

## <u>SERVICE LIST</u>

**<u>Attorneys for Plaintiff</u>**

Lance D. Northcutt
Salvi, Schostok & Pritchard P.C.
161 N. Clark Street, Suite 4700
Chicago, IL  60601
(312) 372-1227
(312) 372-3720
lnorthcutt@salvilaw.com

61560\315642863.v1

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| SHANNON O'BRIEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2023 L 11612 |
| | ) | |
| FRONTIER AIRLINES, INC., d/b/a | ) | |
| FRONTIER AIRLINES. | ) | |
| | ) | |
| Defendants. | | |

**DEFENDANT FRONTIER AIRLINES, INC.'S FIRST SET OF**
**REQUESTS TO ADMIT TO PLAINTIFF SHANNON O'BRIEN**

NOW COMES the Defendant, FRONTIER AIRLINES, INC., by its attorneys, Hinshaw & Culbertson LLP, and for its Requests to Admit pursuant to Illinois Supreme Court Rule 216, requests that Plaintiff, SHANNON O'BRIEN, admit or deny each and every one of the following requests for admission separately, in writing and under oath, and to serve and file a copy of her answers within 28 days of service as required by Rule 216:

**WARNING: If you fail to serve the response required by Rule 216 within 28 days after you are served with this document, all the facts set forth in the requests will be deemed true and all the documents described in the requests will be deemed genuine.**

**INSTRUCTIONS**

1.      The requests for admissions are to be answered in accordance with Illinois Supreme Court Rule 216.

2.      Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 28 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney.

1

3.     If objection is made, the reasons therefor shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter.

4.     A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder.

5.     An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that he or she has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny.

6.     A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request; the party may, subject to the provisions of Illinois Supreme Court Rule 216, deny the matter or set forth reasons why the party cannot admit or deny it.

7.     The party who has requested the admissions may move to determine the sufficiency of the answers or objections. Unless the court determines that an objection is justified, it shall order that an answer be served. If the court determines that an answer does not comply with the requirements of this rule, it may order either that the matter is admitted or that an amended answer be served.

8.     A request is not objectionable merely because it asks an adversary to admit an opinion about facts or an opinion requiring the application of law to fact.

## DEFINITIONS

As used herein, the term(s):

1.     "You," "your," or "Plaintiff" means Shannon O'Brien or any person acting on her behalf.

2.     "Incident" means the events and circumstances which are alleged to have occurred on or about November 16, 2022, aboard Frontier Flight 81 from Punta Cana, Dominican Republic to Chicago, Illinois giving rise to the present cause of action, as further set forth in your Complaint.

## REQUESTS FOR ADMISSION TO ADMIT

1.     Admit that you are a citizen of the state of Illinois.

**RESPONSE**:

2

2.      Admit that you are domiciled in the state of Illinois.

**RESPONSE:**

3.      Admit that the amount in controversy in this matter exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

**RESPONSE:**

4.      Admit that the damages actually sought by you for the injuries alleged in your complaint in this matter exceed seventy-five thousand dollars ($75,000), exclusive of interest and costs.

**RESPONSE:**

Dated: December 22, 2023          Respectfully submitted,

                                HINSHAW & CULBERTSON, LLP

                                /s/*Brian T. Maye*
                                Attorneys for Frontier Airlines

                                Brian T. Maye
                                bmaye@hinshawlaw.com
                                Kurt C. Schlueter
                                kschlueter@hinshawlaw.com
                                Brittany N. Christianson
                                bchristianson@hinshawlaw.com
                                HINSHAW & CULBERTSON LLP
                                151 North Franklin Street, Suite 2500
                                Chicago, IL 60606
                                312-704-3000
                                312-704-3001 (fax)

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, A

FILED
1/4/2024 3:57 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L011612
Calendar, A
25838350

FILED DATE: 1/4/2024 3:57 PM   2023L011612

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

SHANNON O'BRIEN,                                    )
                                                   )
                         Plaintiff,                )
                                                   )      No.: 2023L011612
v.                                                 )
                                                   )
FRONTIER AIRLINES, INC., d/b/a                     )
FRONTIER AIRLINES,                                 )
                                                   )
                         Defendants.               )
                                                   )

### NOTICE OF MOTION

TO:   Brian T. Maye
      Kurt C. Schlueter
      Brittany N. Christianson
      HINSHAW & CULBERTSON LLP
      151 North Franklin Street, Suite 2500
      Chicago, IL 60606
      bmaye@hinshawlaw.com
      kschlueter@hinshawlaw.com
      bchristianson@hinshawlaw.com
      Assistant: Donna Ruane - druane@hinshawlaw.com

     YOU ARE HEREBY NOTIFIED that on **January 31, 2024,** at **9:00 a.m.,** I shall appear
before the Honorable Thomas M. Cushing, or any other judge sitting in his stead in Courtroom
2206 at the Circuit Court of Cook County in Chicago, Illinois, and shall then and there present to
the Court ***Plaintiff's Motion to Strike and Dismiss Defendant's Affirmative Defenses and
Immaterial Matter Pursuant to 735 ILCS 2-615,*** a copy of which was previously filed and served
upon you.

                                   SALVI, SCHOSTOK & PRITCHARD P.C.


                                   By: /s/ *Lance D. Northcutt*_____
                                        Attorney for Plaintiffs

FILED DATE: 1/4/2024 3:57 PM   2023L011612

Lance D. Northcutt (ARDC# 6278144)
Jennifer M. Cascio (ARDC# 6325256)
Emily T. Art (ARDC# 6345559)
**SALVI, SCHOSTOK & PRITCHARD P.C.**
161 N. Clark St., Suite 4700
Chicago, IL 60601
Tel: (312) 372-1227
Fax: (312) 372-3720
Firm No. 34560
lnorthcutt@salvilaw.com
jcascio@salvilaw.com
eart@salvilaw.com

## CERTIFICATE OF SERVICE

I, Jennifer Stolarz, a non-attorney, certify (under penalties provided by law pursuant to 735 ILCS 5/1-109, that the statements set forth herein are true and correct) that I served this Notice and its attachment via electronic mail to all parties listed above on this 4th day of January, 2024.

/s/ *Jennifer Stolarz*

FILED
1/4/2024 3:53 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L011612
Calendar, A
25838148

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

SHANNON O'BRIEN,                    )
                                    )
            Plaintiff,              )
                                    )      No.: 2023L011612
      v.                            )
                                    )
FRONTIER AIRLINES, INC., d/b/a      )
FRONTIER AIRLINES,                  )
                                    )
            Defendants.             )
                                    )

**PLAINTIFF'S MOTION TO STRIKE AND DISMISS DEFENDANT'S AFFIRMATIVE
DEFENSES AND IMMATERIAL MATTER PURSUANT TO 735 ILCS 2-615**

NOW COMES the Plaintiff, SHANNON O'BRIEN, by and through her attorneys, SALVI,

SCHOSTOK & PRITCHARD P.C., and moves this Honorable Court, pursuant to 735 ILCS 5/2-

615(a) to strike and dismiss the affirmative defenses and immaterial matter of Defendant,

FRONTIER AIRLINES, INC., *d/b/a* FRONTIER AIRLINES (hereinafter "Defendant"), and in

support, states as follows:

1.      It is axiomatic that Illinois is a fact pleading jurisdiction. *Knox College v. Celotex

Corp.*, 88 Ill. 2d 407, 426 (1981). To set forth a good and sufficient claim or defense, a pleading

must allege ultimate facts sufficient to satisfy each element of the cause of action or affirmative

defense pled. *Richco Plastic Co. v. IMS Co.*, 288 Ill. App. 3d 782, 784 (1st Dist. 1997).

2.      More specifically, 735 ILCS 5/2-613(d) provides that a defendant is required to set

forth in the answer *the facts* underlying any affirmative defense such that the opposing party is

provided adequate notice of the defense asserted against them. 735 ILCS 5/2-613(d). In

determining the sufficiency of any claim or defense, the court must disregard any conclusions of

1

FILED DATE: 1/4/2024 3:53 PM    2023L011612

fact or law that are not supported by allegations of specific fact. *Richco Plastic Co.*, 288 Ill. App. 3d at 785.

3. Defendant has filed an Answer to Plaintiff's Complaint, in this case containing two affirmative defenses. (*See,* Frontier's Answer and Affirmative Defenses, attached as *Exhibit A*).

4. Defendant has asserted preemption "by federal law, federal regulations, and federal standards of care" as its first affirmative defense and that an unidentified "third-party" is the sole and proximate cause of Plaintiff's injuries as its second affirmative defense. (*See, Exhibit A,* Defense's 1-2). What facts might inform these claims are left to the reader's imagination.

5. Further, Defendant Frontier – in response to no particular allegation or enumerated affirmative defense – issues a disjunctive "general denial" and "reservation of further defenses" as follows:

"GENERAL DENIAL Frontier denies all allegations of Plaintiff's Complaint that are not specifically admitted above." *Exhibit A*, p. 17.

"RESERVATION OF FURTHER DEFENSES Frontier reserves the right to supplement and amend its Answer and to assert any and all affirmative defenses as may be revealed by further investigation, discovery, and determination of the substantive law that will be governing this case. *Id.*

6. Insofar as Defendant has interposed affirmative defenses that are bereft of even the bare minimum facts necessary to plead them, Plaintiff moves to strike the affirmative defenses pursuant to 735 ILCS 5/2-615, as both fail to adequately set forth an appropriate defense and fail to plead sufficient legal and factual allegations against Plaintiff.

FILED DATE: 1/4/2024 3:53 PM    2023L011612

7.      In a similar vein, Defendant's added immaterial matter of a "general denial" and "reservation of further defenses" are not well-grounded in law, uninformed by any alleged fact and untethered to any specific allegation in Plaintiff's complaint.

8.      While a motion to strike an affirmative defense admits all well pleaded facts constituting the defense, together with all reasonable inferences which may be drawn therefrom and raises only a question of law as to the sufficiency of the pleading,[1] here, there are no facts to admit, much less reasonable inferences that flow from them.

9.      The Illinois Code of Civil Procedure provides that a plaintiff may attack a defendant's affirmative defenses and "immaterial matter" in pleadings that are substantially insufficient at law and request such portions be stricken. Section 2-615 of the Illinois Code of Civil Procedure states as follows:

> All objections to pleadings shall be raised by motion. The motion shall point out specifically the defects complained of, and shall ask for appropriate relief, such as: **that a pleading or portion thereof be stricken because substantially insufficient in law,** or that the action be dismissed, or that a pleading be made more definite and certain in a specified particular, **or that designated immaterial matter be stricken out,** or that necessary parties be added, or that designated misjoined parties be dismissed, and so forth. 735 ILCS 5/2-615(a) (emphasis added).

10.     Under Illinois law, a defendant must state specific facts in support of its affirmative defenses.  Here, Defendant's defective affirmative defenses aver only threadbare conclusions and fail to set forth *any* specific facts as required under Illinois law.

11.     Thus, each of Defendant's affirmative defenses and the aforementioned immaterial matter must be stricken and dismissed as substantially insufficient in law and fact.

---

[1] *Raprager v. Allstate Ins. Co.*, 183 Ill. App. 3d 847, 854 (2nd Dist. 1989).

FILED DATE: 1/4/2024 3:53 PM   2023L011612

WHEREFORE, the Plaintiff, SHANNON O'BRIEN, by and through her attorneys, SALVI, SCHOSTOK & PRITCHARD, P.C., respectfully requests that Plaintiff's Motion to Strike and Dismiss Defendant, FRONTIER AIRLINES, INC., d/b/a FRONTIER AIRLINES' Affirmative Defenses and Immaterial Matter be granted.

Respectfully submitted,

SALVI, SCHOSTOK & PRITCHARD, P.C.

By: /s/ *Lance D. Northcutt*
　　　Attorney for Plaintiffs

Lance D. Northcutt (ARDC# 6278144)
Jennifer M. Cascio (ARDC# 6325256)
Emily T. Art (ARDC# 6345559)
**SALVI, SCHOSTOK & PRITCHARD P.C.**
161 N. Clark St., Suite 4700
Chicago, IL 60601
Tel: (312) 372-1227
Fax: (312) 372-3720
Firm No. 34560
lnorthcutt@salvilaw.com
jcascio@salvilaw.com
eart@salvilaw.com

4

FILED
12/14/2023 3:38 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L011612
Calendar, A
25608270

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| SHANNON O'BRIEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2023 L 11612 |
| | ) |
| FRONTIER AIRLINES, INC., d/b/a | ) |
| FRONTIER AIRLINES. | ) |
| | ) |
| Defendants. | ) |

### DEFENDANT FRONTIER AIRLINES' ANSWER TO PLAINTIFF'S COMPLAINT

Now Comes Defendant, FRONTIER AIRLINES, by and through its attorneys, HINSHAW

& CULBERTSON, LLC and as and for its Answer to Plaintiff's Complaint, states as follows:

### PARTIES, JURISDICTION AND VENUE

1.      At all times relevant hereto, SHANNON O'BRIEN (hereinafter SHANNON), was

an individual residing in Cook County, Illinois.

**ANSWER: Frontier lacks knowledge and information sufficient to form a belief as to**

**the truth of the allegations contained in Paragraph 1 of the Complaint, and therefore, denies**

**the same.**

2.      At all times relevant hereto, Defendant FRONTIER AIRLINES, INC. d/b/a

FRONTIER AIRLINES (hereinafter "FRONTIER AIRLINES") was a Colorado corporation.

**ANSWER:      Frontier admits the allegations of Paragraph 2 of Plaintiff's Complaint.**

3.      FRONTIER regularly conducts business in Cook County and owns and operates

airplanes which fly throughout the United States and internationally, including Chicago O'Hare

International Airport and Midway International Airport.



EXHIBIT

A

FILED DATE: 12/14/2023 2:58 PM   2023L011612

**ANSWER:   Fronter admits only that it is an air carrier that operates flights to and from Chicago – O'Hare International Airport. The remaining allegations contained in Paragraph 3 of Plaintiff's Complaint are denied.**

### FACTS COMMON TO ALL COUNTS

4.    Spinal muscular atrophy (SMA) is a neurodegenerative disease that strikes the motor nerve cells in the spinal cords and affects the voluntary muscle movement used for activities such as walking, breathing, eating and crawling.

**ANSWER:   Fronter lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint, and therefore, denies the same.**

5.    SMA is a progressive disease that causes nerves to atrophy – weaken and shrink – due to inactivity.  This atrophy leaves patients with a restricted ability to move and perform basic physical movements and locomotion.   The severity of SMA in any one person is highly individualized.

**ANSWER:   Fronter lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of the Complaint, and therefore, denies the same.**

6.    SMA does not impact sensory nerves or the intellect of patients.  SMA does not affect a person's ability to think, learn and build relationships with others.

**ANSWER:   Fronter lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6 of the Complaint, and therefore, denies the same.**

FILED DATE: 12/14/2023 2:58 PM    2023L011612

7.      SMA is diagnosed in approximately 1 in every 11,000 births in the United States; 1 in every 50 Americans is a genetic carrier.  The effects of SMA do not discriminate, as SMA can affect any race or gender.

**ANSWER:    Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint, and therefore, denies the same.**

8.      Individuals with SMA must often travel by air to attend work meetings, participate in clinical trials, or for leisure.  To do so however, an individual with SMA must surrender their custom mechanized wheelchair – their only means of independent mobility – at the gate before they board a commercial aircraft.  The wheelchair is then loaded into the plane's cargo space with all checked luggage.

**ANSWER:    Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint, and therefore, denies the same.**

9.      The mechanized wheelchairs used by persons with SMA and others are customized for the unique needs and size of the person using them.  They typically cost tens of thousands of dollars and are difficult to repair or replace.

**ANSWER:    Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the Complaint, and therefore, denies the same.**

10.     Once an individual surrenders their mechanized wheelchair to board a plane, they are typically forced to wait as everyone else boards the aircraft.  The individual is then wheeled into the aircraft in a manual wheelchair which has none of the head support, lateral body support,

cushioning, or other assistive devices such as breathing apparatus that many individuals with SMA require.

**ANSWER:** **Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint, and therefore, denies the same.**

11.     Once on board an aircraft, there are no accessible lavatories for use.  Those who have SMA or other neuromuscular diseases must sit on a regular cushion without lateral restraints for the entire flight and must sit next to someone who will hold them up during takeoff, turbulence and landing.

**ANSWER:** **Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint, and therefore, denies the same.**

12.     Upon arrival at the destination, a person with SMA then waits for the entire aircraft to deplane before they are again transferred to another ill-fitting and very uncomfortable manual wheelchair to wait in the terminal for their custom mechanized wheelchair to arrive.  When it does, the mechanized wheelchair is often damaged and in many cases, is lost or misplaced.

**ANSWER:** **Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint, and therefore, denies the same.**

13.     Because these custom wheelchairs are treated like common luggage by commercial air carriers, they are subject to the same indiscriminate loss and damage that luggage is.  According to the U.S. Department of Transportation, airlines on average damaged or destroyed 35 wheelchairs every single day during the month of May.

FILED DATE: 12/14/2023 2:58 PM    2023L011612

**ANSWER:** **Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Complaint, and therefore, denies the same.**

14.     The experience of commercial flight for a person with SMA – or any individual who relies upon a mechanized wheelchair – can often range from humiliating and dehumanizing to painful.  In cases where a custom mechanized wheelchair is lost or stolen, the affected individual is completely robbed of mobility and freedom in a manner that impacts all aspects of their ability to independently live and work.

**ANSWER:** **Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint, and therefore, denies the same.**

15.     This experience has been visited upon countless individuals with SMA and other who rely upon mechanized wheelchairs.  Media accounts of individuals who have suffered as a result of gross carelessness are well-known throughout the airline industry.[1]

---

[1] https://www.youtube.com/watch?v=Flba5134r-o
https://abcnews.go.com/US/2-travelers-wheelchairs-lost-same-united-airlines-flight/story?id=96780502
https://www.usatoday.com/story/travel/airline-news/2023/08/05/american-airlines-damaged-   wheelchair/70519401007/
https://www.travelweekly.com/Travel-News/Airline-News/Poor-handling-wheelchairs-continues-plague-airlines
https://www.washingtonpost.com/travel/2021/06/07/wheelchair-scooter-damage-airplane-flights
https://www.freep.com/storv/news/local/michigan/wayne/2023/05/09/spirit-airlines-loses-ypsilanti-mans-wheelchair-goes-viral-on-reddit/70195 568007/
https://globalnews.ca/news/9417590/air-canada-lost-wheelchair-broken-replacement/
https://www newsweek.com/customer-says-american-airlines-lost-wheelchair-stranded-hours-1744685
https://travelnoire.com/american-airlines-loses-passengers-22k-wheelchair
https://www businessinsider.com/disability-activist-died-after-united-airlines-destroyed-30k-wheelchair-2021-11
https://www nbcnewyork.com/news/local/nyc-woman-sUs-delta-airlines-lost-then-damaged-her-specialized-30000-wheelchair/3798335/

FILED DATE: 12/14/2023 2:58 PM 2023L011612

**ANSWER:** **Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint, and therefore, denies the same.**

16.    Plaintiff, SHANNON O'BRIEN is the Vice President of Community Support at Cure SMA, an organization that provides advocacy, support and research on behalf of individuals diagnosed with Spinal Muscular Atrophy (SMA).  SHANNON is also an individual with SMA.[2]

**ANSWER:** **Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint, and therefore, denies the same.**

17.    SHANNON leads a busy life, both personally and professionally, and is highly self-sufficient.  In her capacity at CURE SMA, she frequently travels through the United States to advocate and support people with SMA.

**ANSWER: Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint, and therefore, denies the same.**

18.    Because SHANNON has SMA, she is unable to walk or hold her head and upper body straight while in a seated position.  To meet her most basic needs at work and at home, SHANNON relies upon a highly customized mechanized wheelchair that holds her upper body and head in place and allows SHANNON to move freely, drive, go to work and engage in the activities of her daily life.  As is the experience with most individuals with SMA, SHANNON's wheelchair provides her with independence that would otherwise not be possible.

---

[2] This action is brought by the Plaintiff solely in her individual capacity only.

FILED DATE: 12/14/2023 2:58 PM    2023L011612

**ANSWER:** Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint, and therefore, denies the same.

19. SHANNON is fully dependent on her custom power wheelchair as her *de facto* "legs" to get her around and to keep her comfortable throughout the day. The only times in her life that SHANNON is not in her wheelchair is when she is sleeping, showering, or on an airplane traveling.

**ANSWER:** Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Complaint, and therefore, denies the same.

20. SHANNON is always in her wheelchair and is unable to go anywhere that is not accessible, as she is extremely uncomfortable and unsafe when not properly supported by her wheelchair and headrest.

**ANSWER:** Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint, and therefore, denies the same.

21. Unless SHANNON is in her wheelchair, she is not able to safely eat due to positional swallowing issues. If her headrest gets moved even slightly, SHANNON gets tension headaches and neck pain due to contractures and muscle tightness.

**ANSWER:** Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint, and therefore, denies the same.

22.     Although SHANNON must necessarily travel by air for work and leisure, the experience of being on the plane without her wheelchair is extremely challenging.  Because SHANNON cannot sit in a supported position on the flight due to muscle weakness, the lack of seating support causes intense tension headaches and muscle pain that persists after a flight.

**ANSWER:     Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint, and therefore, denies the same.**

23.     SHANNON must dehydrate herself prior to a flight, as she has no way of using the bathroom in an airplane.

**ANSWER:     Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint, and therefore, denies the same.**

24.     On November 26, 2022, and at all times relevant hereto, SHANNON was a passenger scheduled to fly on FRONTIER Flight 81 flying from Punta Cana International Airport to Chicago O'Hare International Airport (hereinafter "O'Hare") at 2:30 pm.  On November 26, 2022, SHANNON gate-checked her custom power wheelchair in Punta Cana around 3:45 pm (2:45 pm EST) to board Frontier Flight 81 direct from PUJ (Punta Cana) to ORD (Chicago O'Hare) with 28 other family members and friends to return home form a holiday vacation.

**ANSWER:     Upon information and belief, Frontier admits that on November 26, 2022, Shannon O'Brien was a ticketed passenger onboard Frontier Flight 81 traveling from Punta Cana, Dominican Republic to Chicago, Illinois. Frontier lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 24 of the Complaint, and therefore, denies the same.**

FILED DATE: 12/14/2023 2:58 PM    2023L011612

25.     Upon takeoff, SHANNON's plane experienced a hydraulic mechanical malfunction and had to make an emergency landing in Orlando, Florida.

**ANSWER:     Frontier admits that the aircraft experienced a hydraulic mechanical malfunction during Frontier Flight 81. Frontier denies the remaining allegations in Paragraph 25 of Plaintiff's Complaint.**

26.     After making an emergency landing in Orlando around 7:15 pm EST, SHANNON was kept on the plane for over an hour waiting for her own wheelchair to arrive.

**ANSWER:     Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Complaint, and therefore, denies the same.**

27.     After waiting for more than an hour, Frontier Airlines personnel failed to deliver her mechanized wheelchair.  Frontier Airlines personnel then brought SHANNON off the plane in an unsafe manual transport wheelchair that had no lateral or head support, while other passengers were taken to a baggage carousel for baggage reclaim.  SHANNON was told she could retrieve her wheelchair at baggage claim.

**ANSWER:     Frontier denies the allegations contained in Paragraph 27 of Plaintiff's Complaint.**

28.     SHANNON was then taken through customs and brought to a baggage carousel where we she told she would be able to retrieve her wheelchair and sent home on a new flight. When SHANNON arrived at baggage claim, however, her wheelchair was not there.

**ANSWER:     Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 of the Complaint, and therefore, denies the same.**

FILED DATE: 12/14/2023 2:58 PM 2023L011612

29. After waiting at baggage with other passengers for nearly two hours, Defendant FRONTIER AIRLINES announced that no bags would be removed from the plane and that they would arrive in Chicago the next day on another flight.

**ANSWER:    Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 of the Complaint, and therefore, denies the same.**

30. Prior to SHANNON arriving at the baggage area with the other passengers, one of the Frontier workers made an announcement at the baggage counsel to all of the passengers (which included many of her relatives) that because the passenger in the wheelchair had not deboarded the plane, all luggage retrieval was delayed. This statement was false and served no purpose other than to scapegoat SHANNON for the unfolding series of failures that occurred on the flight.

**ANSWER:    Frontier denies the allegations contained in Paragraph 30 of Plaintiff's Complaint.**

31. By the time SHANNON arrived at a security checkpoint, there was no TSA agents on duty. SHANNON then waited another 30-60 minutes in pain from being in the manual transport wheelchair while TSA agents were located.

**ANSWER:    Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 of the Complaint, and therefore, denies the same.**

32. When SHANNON arrived at the new assigned gate, every restaurant and shop was closed and there were no vending machines available to obtain food or water.

FILED DATE: 12/14/2023 2:58 PM    2023L011612

**ANSWER:** Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the Complaint, and therefore, denies the same.

33.     Although there was a plane ready to depart at the new gate, the assigned flight crew had "timed out" due to the inordinate delays.  During this time SHANNON was forced to sit, in increasing pain in the manual transport chair with only a few pillows SHANNON had borrowed from other passengers to try and support her head for over ten hours.

**ANSWER:** Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint, and therefore, denies the same.

34.     When SHANNON's sister/caretaker protested these conditions and alerted Frontier staff of the pain and discomfort SHANNON was in, she was told by the gate agent that retrieval of SHANNON'S wheelchair was not a priority and would not be on board SHANNON's flight home.

**ANSWER:** Frontier denies the allegations contained in Paragraph 34 of Plaintiff's Complaint.

35.     This demoralizing comment prompted SHANNON to request a disability advocate who arrived as SHANNON was about to board the new flight.  This individual claimed, falsely, that SHANNON's mechanized wheelchair had actually been transferred to the cargo hold of the new plane and would arrive with her in Chicago.

**ANSWER:** Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 of the Complaint, and therefore, denies the same.

36. Skeptical, SHANNON pressed the issue until the representative confirmed over her two-way radio that the cargo hold was completely empty for the new flight, that her chair was still on the original plane, and that it would not be removed until that Sunday. SHANNON was further assured by the representative that her wheelchair would be on the next Frontier flight Monday morning. SHANNON repeatedly explained how medically necessary her chair was for her safety, comfort and well-being to no avail.

**ANSWER:** **Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 of the Complaint, and therefore, denies the same.**

37. After landing in Chicago Sunday late morning, SHANNON was driven home by being placed in the front seat of a regular car and taken home to wait in bed to hear whether her wheelchair made it on the flight. SHANNON never received the call and was unable to rouse a single Frontier worker to address the problem.

**ANSWER:** **Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37 of the Complaint, and therefore, denies the same.**

38. Eventually, SHANNON was told the wheelchair would arrive at Midway Airport, a much longer drive from her home in Des Plaines. Relying on this information, SHANNON went to Midway Airport with family members to retrieve her wheelchair as promised, only to learn upon her arrival that the wheelchair was still in Orlando and would not arrive until the next day.

**ANSWER:** **Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 of the Complaint, and therefore, denies the same.**

39.     As SHANNON's ordeal with FRONTIER AIRLINES continued unabated, it was only when SHANNON shared her story on social media and later on a television interview that Defendant FRONTIER AIRLINES finally arranged delivery of the wheelchair at O'Hare Airport.

**ANSWER:     Frontier denies the allegations contained in Paragraph 39 of Plaintiff's Complaint.**

40.     The wheelchair arrived in a partially assembled state and with damage to the footplate.

**ANSWER:     Frontier denies the allegations contained in Paragraph 40 of Plaintiff's Complaint.**

41.     In total, SHANNON was without her wheelchair for approximately 53 hours.  The inordinate delay and conscious disregard for SHANNON's health and safety demonstrated by Defendant FRONTIER AIRLINES caused her continuous physical pain and emotional anguish.

**ANSWER:     Frontier denies the allegations contained in Paragraph 41 of Plaintiff's Complaint.**

42.     Because SHANNON was unjustly deprived of her wheelchair, SHANNON missed an important appointment for a catheter change at a local hospital on Monday November 28th.

**ANSWER:     Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 42 of the Complaint, and therefore, denies the same.**

43.     Because SHANNON was unable to get rescheduled for another three weeks, she experienced further pain, discomfort and an increase in bladder spasms.

**ANSWER:** Frontier lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43 of the Complaint, and therefore, denies the same.

## COUNT I – NEGLIGENCE

### *Negligence – Frontier Airlines*

1. Plaintiff adopts, realleges, and incorporates by reference paragraphs 1-43 of the Facts Common to All Counts as though fully set forth herein.

**ANSWER:** Frontier incorporates its Answers to Paragraphs 1-43 as fully set forth herein.

2. At all times relevant hereto, FRONTIER had a duty of care to ensure that SHANNON was not deprived of her wheelchair and thus, her mobility, beyond the time necessary for point-to-point travel.

**ANSWER:** Paragraph 2 of Count I of Plaintiff's Complaint contains conclusions of law to which no response is required. To the extent that a response is deemed required, Frontier admits only those duties imposed upon it by applicable law and denies all other allegations contained in Paragraph 2 of Count I of Plaintiff's Complaint.

3. At all times relevant hereto, FRONTIER had a duty of care to ensure that SHANNON was not unnecessarily subjected to pain, discomfort, emotional distress and inconvenience due to its careless handling of SHANNON'S wheelchair.

**ANSWER:** Paragraph 3 of Count I of Plaintiff's Complaint contains conclusions of law to which no response is required. To the extent that a response is deemed required, Frontier admits only those duties imposed upon it by applicable law and denies all other allegations contained in Paragraph 3 of Count I of Plaintiff's Complaint.

14

FILED DATE: 12/14/2023 2:58 PM 2023L011612

4.      At all times relevant, FRONTIER owed a duty to SHANNON and other disabled passengers, to abide by the standard of care established by the Air Carrier Access Act (ACAA) and the Americans With Disabilities Act (ACA).

**ANSWER:    Paragraph 4 of Count I of Plaintiff's Complaint contains conclusions of law to which no response is required. To the extent that a response is deemed required, Frontier admits only those duties imposed upon it by applicable law and denies all other allegations contained in Paragraph 3 of Count I of Plaintiff's Complaint.**

5.      Notwithstanding the aforesaid duties, at the time and place aforesaid, FRONTIER was negligent and/or careless in one or more of the following respects:

a.      Failed to monitor and keep track of the subject wheelchair;
b.      Failed to timely locate and return the subject wheelchair;
c.      On numerous occasions, misinformed SHANNON as to the location of her wheelchair and its arrival time;
d.      Failed to comport with the standard of care established by the ACAA with respect to assisting disabled passengers; and
e.      Failed to provide for proper stowage of personal requirements related to individual's disability in violation of 14 C.F.R. 382.

**ANSWER:        Frontier denies the allegations contained in Paragraph 5 of Count I of Plaintiff's Complaint, including subparagraphs 5(a) – 5(e).**

6.      As a direct and proximate result of one or more of the foregoing negligent and/or careless acts/or omissions, SHANNON experienced physical pain, protracted physical discomfort and emotional distress.

**ANSWER:    Frontier denies the allegations contained in Paragraph 6 of Count I of Plaintiff's Complaint.**

7.     As a direct and proximate cause of one or more of the foregoing negligent and/or careless acts/or omissions, SHANNON was bed-ridden for two days and endured conscious suffering and emotional distress.

**ANSWER:     Frontier denies the allegations contained in Paragraph 7 of Count I of Plaintiff's Complaint.**

## GENERAL DENIAL

Frontier denies all allegations of Plaintiff's Complaint that are not specifically admitted above.

## AFFIRMATIVE DEFENSES

Pleading in the alternative, and without prejudice to its denials asserted above in its Answer, Defendant FRONTIER AIRLINES, INC. ("Frontier"), hereby raises, asserts, and preserves the following Affirmative Defenses to Plaintiff's Complaint:

## FIRST AFFIRMATIVE DEFENSE

1.     Plaintiff alleges she was a passenger on Frontier Flight 81 traveling from Punta Cana, Dominican Republic to Chicago, Illinois O'Hare International Airport on November 26, 2022.

2.     Plaintiff alleges she sustained damages as a result of the delay in the arrival of her motorized wheelchair in Chicago, Illinois.

3.     Plaintiff's claims against Frontier are preempted, in whole or in part, by federal law, federal regulations, and federal standards of care applicable to flight operations and safety.

WHEREFORE, Defendant, FRONTIER AIRLINES, INC., requests that this Court dismiss this action with prejudice and award Defendant the costs it has incurred in the defense of this matter, and for any other relief that this Court deems just and equitable.

FILED DATE: 12/14/2023 3:58 PM   2023L011612

FILED DATE: 12/14/2023 2:58 PM    2023L011612

### SECOND AFFIRMATIVE DEFENSE

1.      Plaintiff alleges she was a passenger on Frontier Flight 81 traveling from Punta Cana, Dominican Republic to Chicago, Illinois O'Hare International Airport on November 26, 2022.

2.      Plaintiff alleges she sustained damages as a result of the delay in the arrival of her motorized wheelchair in Chicago, Illinois.

3.      The acts and omissions of a third-party for whom Frontier is not responsible and over whom Frontier has no control were the sole proximate cause of the events described in Plaintiff's Complaint.

4.      Therefore, Frontier is not responsible for any of Plaintiff's alleged damages.

WHEREFORE, Defendant, FRONTIER AIRLINES, INC., requests that this Court dismiss this action with prejudice and award Defendant the costs it has incurred in the defense of this matter, and for any other relief that this Court deems just and equitable.

### RESERVATION OF FURTHER DEFENSES

Frontier reserves the right to supplement and amend its Answer and to assert any and all affirmative defenses as may be revealed by further investigation, discovery, and determination of the substantive law that will be governing this case.

### JURY DEMAND

Without waiving its objections set forth herein, Frontier hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

HINSHAW & CULBERTSON, LLP

 /s/*Brian T. Maye*
Attorneys for Frontier Airlines

17

Brian T. Maye
bmaye@hinshawlaw.com
Kurt C. Schlueter
kschlueter@hinshawlaw.com
Brittany N. Christianson
bchristianson@hinshawlaw.com
HINSHAW & CULBERTSON LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
312-704-3000
312-704-3001 (fax)

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

SHANNON O'BRIEN,                          )
                                          )
                    Plaintiff,            )
                                          )      No.: 2023L011612
v.                                        )
                                          )
FRONTIER AIRLINES, INC., d/b/a            )
FRONTIER AIRLINES,                        )
                                          )
                    Defendants.           )
                                          )

## CERTIFICATE OF SERVICE OF DISCOVERY DOCUMENT

Brian T. Maye
Kurt C. Schlueter
Brittany N. Christianson
HINSHAW & CULBERTSON LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
bmaye@hinshawlaw.com
kschlueter@hinshawlaw.com
bchristianson@hinshawlaw.com

Under penalties as provided by law pursuant to 735 ILCS 5/1-109, the undersigned states that on **January 17, 2024**, the following-described document was served upon counsel of record by electronic mail at or before the hour of 5:00 P.M.:

- ***Plaintiff's Responses to Defendant's First Set of Requests to Admit***

                                        /s/ *Lance D. Northcutt*
                                        One of the Attorneys for the Plaintiffs

Lance D. Northcutt (ARDC# 6278144)
Jennifer M. Cascio (ARDC# 6325256)
Emily T. Art (ARDC# 6345559)
**SALVI, SCHOSTOK & PRITCHARD P.C.**
161 N. Clark St., Suite 4700
Chicago, IL 60601
312.372.1227; f: 312.372.3720
lnorthcutt@salvilaw.com
jcascio@salvilaw.com
eart@salvilaw.com
Firm No. 34560

## **<u>CERTIFICATE OF SERVICE</u>**

I, Jennifer Stolarz, a non-attorney, certify, pursuant to 735 ILCS 5/1-109 of the Code of Civil Procedure, that I served a copy of the above and foregoing Certificate of Service of Discovery Document, together with a copy of the discovery document referenced therein, upon counsel of record by electronic mail at or before the hour of 5:00 p.m. on January 17, 2024.

*/s/ Jennifer Stolarz*

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| SHANNON O'BRIEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.: 2023L011612 |
| v. | ) | |
| | ) | |
| FRONTIER AIRLINES, INC., d/b/a | ) | |
| FRONTIER AIRLINES, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S RESPONSES TO DEFENDANT'S
## FIRST SET OF REQUESTS TO ADMIT

1.      Admit that you are a citizen of the state of Illinois.

**RESPONSE:** ADMIT

2.      Admit that you are domiciled in the state of Illinois.

**RESPONSE:** ADMIT

3.      Admit that the amount in controversy in this matter exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

**RESPONSE:**  Pursuant to Illinois Supreme Court Rule 216(c)(1) and as set forth in Plaintiff's sworn statement attached as **Exhibit A**, Plaintiff cannot truthfully admit or deny this request beyond stating that Plaintiff reasonably believes that the amount in controversy will exceed the jurisdictional limit of the Law Division of the Circuit Court of Cook County.  Beyond that, Plaintiff cannot affirmatively state at this early juncture of the litigation and without the benefit of pretrial discovery what the contours of the litigation will be and what monetary damages will ultimately be sought and, thus, what the amount in controversy will be.

4.    Admit that the damages actually sought by you for the injuries alleged in your complaint in this matter exceed seventy-five thousand dollars ($75,000), exclusive of interest and costs.

**RESPONSE**: Pursuant to Illinois Supreme Court Rule 216(c)(1) and as set forth in Plaintiff's sworn statement attached as **Exhibit A**, Plaintiff cannot truthfully admit or deny this request beyond stating that Plaintiff reasonably believes that the amount in controversy will exceed the jurisdictional limit of the Law Division of the Circuit Court of Cook County. Beyond that, Plaintiff cannot affirmatively state at this early juncture of the litigation and without the benefit of pretrial discovery what the contours of the litigation will be and what monetary damages will ultimately be sought.

Respectfully submitted,

SALVI, SCHOSTOK & PRITCHARD, P.C.

By: /s/ *Lance D. Northcutt*
        Attorney for Plaintiffs

Lance D. Northcutt (ARDC# 6278144)
Jennifer M. Cascio (ARDC# 6325256)
Emily T. Art (ARDC# 6345559)
**SALVI, SCHOSTOK & PRITCHARD P.C.**
161 N. Clark St., Suite 4700
Chicago, IL 60601
Phone: (312) 372-1227
Fax: (312) 372-3720
lnorthcutt@salvilaw.com
jcascio@salvilaw.com
eart@salvilaw.com
Firm No. 34560

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| SHANNON O'BRIEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.: 2023L011612 |
| v. | ) | |
| | ) | |
| FRONTIER AIRLINES, INC., d/b/a | ) | |
| FRONTIER AIRLINES, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## AFFIDAVIT OF PLAINTIFF SHANNON O'BRIEN

I, Shannon O'Brien, being first duly sworn upon oath, hereby affirm and state as follows:

1.      My name is Shannan O'Brien. I am the Plaintiff in the above captioned case.

2.      I am a citizen of the state of Illinois.

3.      I am domiciled in the state of Illinois.

4.      I reasonably believe that the amount in controversy will exceed the jurisdictional limit of the Law Division of the Circuit Court of Cook County.

5.      I cannot affirmatively state at this stage of litigation whether the amount in controversy in this case exceeds seventy-five thousand dollars ($75,000.00). Any decision as to whether an amount that exceeds $75,000.00 will be made as I learn more information about the case and after consultation with my attorneys.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this affidavit are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that I verily believe the same to be true.

FURTHER AFFIANT SAYETH NAUGHT

Executed on January 16, 2024

_____
SHANNON O'BRIEN

